Thank you. May it please the court Elizabeth White for the United States. I'm going to try to save about five minutes of my time for rebuttal and I will keep an eye on my own clock. Thank you. The Supreme Court and this court have both made clear that a district court's authority to dismiss a criminal indictment is exceedingly limited. As a violation of due process a court can dismiss an indictment only when the government's misconduct is so universal sense of justice. Dismissal is an exercise of this court's supervisory authority is permitted only where prosecutorial misconduct constitutes flagrant misbehavior that causes substantial prejudice and where no lesser remedy is available. The district court here exceeded its limited authority and abused its narrow discretion. The court based its dismissal of this case on the timing of the government's disclosure of eight documents or sets of documents but even if this court agrees that every one of those documents contain braiding material and thus even if this court concludes that the government should have turned over those documents earlier there is simply no basis on which to conclude that our failure to do so constituted flagrant misbehavior that resulted in substantial prejudice to the defense that could not be cured by a remedy less than dismissal of the and it's certainly not so grossly shocking or outrageous as to violate the universal sense of justice. To the contrary the government the record shows here that the government worked tirelessly and tried diligently to comply with all of its obligations. We reviewed and produced hundreds of thousands of pages of documents and discovery, hundreds of hours of audio tapes and video recordings for more than 400 FBI 302s and BLM memoranda of activity and investigations. We kept a detailed discovery log 87 pages itemizing every one of the thousands hundreds or tens of thousands of documents we turn over and the dates on which we turned over them. In under enormous task we missed a few things. We overlooked a document here or we didn't appreciate the potential relevance of a document there and and in light of the district courts findings of materiality what is clear is that we fall short. We fell short with respect to these eight documents but falling short simply does not warrant the extreme sanction of dismissing a criminal indictment in particular dismissing it and it does not I'm sorry you fell short on not just one not just two but a series of things and although I'm sympathetic to the prosecution in the sense of the lawyers you well understand that the obligation of the government under Brady doesn't fall simply fall on the lawyers it falls on the FBI it falls on investigating authorities and so on so some of the difficulty here is not the fault of the lawyers prosecuting the case so I can well and we're sympathetic with the work prosecutors did under difficult circumstances with a huge amount of stuff but if it's being withheld before it gets to you that's still a problem for the government. Your honor of the eight documents or sets of documents the only one that we didn't well there's two that we didn't know about one was the talk log the administrative log that was in the talk truck that we just that we never knew about and the other one is this 2010 internal affairs report about an anonymous phone call complaining about desert tortoise habitat that one we actually did look for we had it had been misidentified as a as a OIG report and we had asked the our case agent to look for it and they looked for it and they couldn't find it because it wasn't an OIG report when they finally did find it and found that it was this and in her order the judge didn't rely on the tortoise document correct yes no she did she said that she said that it was material and that our our suppression of it was willful and that it caused the press the defendant's prejudice because they could have used it to cross-examine one of our witnesses about whether Mr. Bundy's cattle was actually harming the desert tortoise habitat now with respect to that I think that even if we had known about that record and had that record you know we're going through hundreds of thousands of documents trying to turn over every single thing that is potentially relevant and and frankly I don't think there's any way that we would have anticipated that whether Mr. Bundy's cattle were or were not harming the desert tortoise habitat would have any relevance to any element of the offense any possible defense to the charges charged in the superseding indictment the only thing that that report could be used for is to try to make an argument that the federal district orders that the law enforcement officers were executing were somehow invalid and should be ignored and that in our view is simply an argument about jury nullification and so we would not have believed that to be relevant in any event but you know but we did look for it and we tried to find it now the top log with is the administrative log about the SWAT team there the FBI was at Bunkerville for four days they were there from April 5th until the 8th I think they kind of led left the SWAT teams in the pre-dawn hours of the night so they were gone before Ryan Payne arrived in Nevada they were they were before the incident the actual standoff and assault on April 12th and and so the way it was explained is that the administrative log which is sort of tracks who's where and what they're doing because the SWAT team was never activated that file was never put into the investigative file of the police file because it was just this administrative one yeah that uses the word snipers that's not elsewhere in the record correct there is two points yes that the top log does have two references snipers and inserted apparently they went on some sort of training mission while they were in the area but it is not true that there was no discussion about snipers elsewhere there was a there was a significant amount of information that we disclosed primarily about snipers in the in the wash law enforcement officers taking marksman positions was the word sniper used in those other documents yes yes absolutely we in our in our opening brief we included some of them I think that you know one of the things that I pointed out is that we had a park ranger who testified at the first trial and he testified that he deployed his designated marksman team and he described the designated marksman team one of them's got a 308 long-range rifle with the scope the other one has binoculars to work as a spotter and then on cross-examination he was asked so a designated marksman team that's like a sniper team right and he said yes it is and they said and is your team in this picture here and he said no they'd been deployed so so this idea and this is one of the things that the judge said in her order that we had insisted in prior trials that there were no snipers and in fact there was discussion the discussion about snipers focused on two things the officers the BLM Rangers Brunk and Russell who were on the hill above Dave Bundy when Dave Bundy was arrested the defendants wanted to call them snipers they were not snipers they're BLM officers carrying BLM issue rifles they were not sniper rifles they were not hidden they were not camouflaged they were not trying to shoot people they were there in overwatch so there was discussion about the use of the word snipers to describe Brunk and Russell and there was discussion about on the 12th at the actual standoff at the watch whether the officers who were up on the mesa were snipers and they weren't but there was so there was discussion about that and we pushed back about that and I think I want to step back and make one thing clear because the defendants were arguing and the judge in her order really does sort of seem to accept this idea that the government was playing some kind of semantic word game with the word sniper that you know we should have known that they were just talking about officers with guns and we should have their characterization of those snipers and and I would just point you to two motions that that Ryan Payne includes in his excerpts of record there were two motions that were filed by by the co-defendants in the earlier trial it was a motion in Lemonade to try to preclude the government from referring to the gunman on the bridge as snipers and what they said is that the word sniper is an inflammatory word that carries a horrible connotation that a sniper is the most hated kind of soldier who is camouflaged who hides where he can't be seen whose mission is to shoot to kill and who paralyzes people with fear and so so that's and so the defendants were saying so don't call us snipers because if you use the word sniper that's the connotation that you're sending that's the message that you're trying to send about who we are and what we do and so I would say that you know these defendants and and we didn't refer to those snipers okay I'm sorry counsel I'm sorry I just need clarification so that motion in Lemonade was filed in the in in the first trial yes the first they filed it in the first trial and then they filed it again prior to the second trial and it was filed and who filed it Mr. Payne it was it no it was that it was the trial one and trial two co-defendants I pointed out because Ryan Payne included it in his supplemental excerpt of record in this appeal and so I think that but I think that it characterizes so I'm sorry who filed it did the public defender file it? No, no, no. The public defender is representing Ryan Payne. This is somebody else in the first case there's not the government who filed this no no no no this was the defendants in the first two trials a motion in Lemonade to preclude the government from referring to the defendants on the bridge as snipers and and Ryan Payne included that in his excerpt of record on this appeal and I think that the importance of it to me is is that it means something when when Ryan Bundy or when the Bundys and Payne sent out the word that Bundy Ranch was surrounded by snipers okay so counsel let me let me I'm gonna push back just a little bit here so you have a number of paragraphs in the indictment paragraphs I think it's 84 88 maybe 92 that claim that deliberately distributed misinformation about being surrounded being surveilled and that there were that they were there were snipers so there's sort of three things the word snipers does appear in the indictment now if the tech if the tactic in the first trial was to somehow get the word sniper out of that because it had they thought it had a bad connotation why would the defendants in a second trial be be bound by that they filed a motion in Lemonade to exclude that I mean this thing feels like a different a different strategy here and it feels like it's probably a legitimate one that is you've alleged that that Bundy falsely claimed that there are snipers and yet there are FBI documents and other documents in which they they themselves use the word sniper and that would mean then that those allegations you could not prove those yeah and I think and this is and this is where we were on November 8th on November 8th so we had turnover information the organization chart showing who the who the BLM folks were that we're going to be doing surveillance around Bundy Ranch the operation plan that said that Bundy Ranch was going to be surveilled 24-7 and that the teams were going to be armed with we're going to be carrying agency rifles we had provided that information in in a number of different forms and as I say I mean the the the Racker 302 and the Del Molino 302 we missed those we turned over 400 some 302s and we missed those and it was on November 8th and it was actually talking about the surveillance camera hearing about the camera where the defendants said you know there this isn't just about provocation because they had been talking about self-defense and provocation instigation and they said this isn't just about provocation instigation this is I mean they the government is alleging that we falsely said we were surrounded by snipers and if we actually believed that we were surrounded by snipers if we mistook the surveillance camera or the BLM officers in the lookout point or the technician who came to service the camera after Ryan Bundy ran it over on his ATV if we if we perceived those to be snipers then this actually goes to to a way that we can rebut the specific allegations in the indictment and what the district court said this was a hearing about the surveillance camera what the district court said is okay I see now judge lean had denied your request for information about the surveillance camera before because you made no showing of materiality and there was no apparent materiality and so I find that the government didn't do anything wrong there was no bad faith here but now now that you're making this argument about this about about mistaking these people for snipers as a way of saying subjectively you felt like there were snipers whether there actually were or you can use this to to rebut these allegations now I'm going to order the government to turn this stuff over because now I see it's material and that and so we did and in fact with respect to the surveillance stuff they were talking about stuff that we had just disclosed the day before that hearing so in fact by the time with respect to the camera the government said that it was that she found that this new theory made of material we had already disclosed it I would like to save some time I imagine I'm gonna have some rebuttals so if there are any other questions you want from me right now let's let's hear from the other side and then you've saved some time thank you your honor's Larry claiming on behalf of five and Bundy may it please the court this case was not about an armed confrontation with land management officers or the FBI if there was a confrontation it was by these individuals by these these entities themselves and that's important to remember my client has already done nearly two years in prison and he was even put in solitary confinement now what is absolutely correct that miss white stated is that there was flagrant abuse here it was abuse and we've seen that in a number of situations and my colleague miss clear is going to get into it and judge Navarro made the exact correct decision now what I have filed earlier your honors was a motion for limited remand and you had the courtesy of telling you that I could raise this again in our initial brief and I'm doing the oral argument the appeal should be summarily dismissed I mean it's not something or rather the dismissal the indictment should be affirmed but if your honor has any issues here the slam-dunk will be the testimony of Larry Wooten a BLM whistleblower who came forward and revealed things that are unimaginable kill lists on the heads of people disparaging the Mormon faith of the Bundy's in effect calling them the equivalent of subhuman people that were celebrating the Bundy's having been assaulted by some of these federal agents I can go on and on and on and you'll see that because not only was there a report filed at the court level although we never had the opportunity to take the testimony of Larry Wooten before the indictment was dismissed but I obtained Freedom of Information Act documents through a parallel case in just with regard to the agents is that this whistleblower Larry Wooten who was a high-level supervisor special agent on the case came to the prosecution came to the US Attorney's Office Stephen Myra Daniel she's Gloria and said look this is what's going on exculpatory information is being withheld this is the gross misconduct that has occurred even religious rights are being violated and Myra and company turned a blind eye and instead recommended that this agent Larry Wooten should be taken off the case retaliated against him so your honor I do take slight issue with your saying this is not about the prosecutors it is about the prosecutors as a matter of fact there's an OPR investigation and IG investigation and in theory is going on with the Justice Department as we speak I'm not privy to the result because they don't give that to private individuals until they release anything but there's one other fact which is very very important and not just with regard to snipers is it among the information that was withheld were risk assessment reports reports which shows that the bunnies were not violent they were peaceful and that's super important for the jury to have heard that now last but not least what I'm saying is is that affirm the dismissal your honor but if you're not going to do that without great thought then we need to be able to go back and take the testimony of Wooten put it on the record because that would be the nail in the coffin of this prosecution you're making that request because if you think if we were to reverse and send it back the district court wouldn't do that on its own or I'm just confused as to why you think well I don't think that you should reverse your honor obviously what I'm saying is is that this is the insurance policy of my client to have you rule and affirm because this is a matter that you should be able to see straight up now you do have documentation I provided it to you and there is a report by Larry Wooten on the record although it was not admitted into evidence but there's absolutely no doubt and I'm dealing with what Miss White said which was frankly untrue that there is gross abuse here there is gross abuse it's one of the worst cases of abuse I think in the history of any prosecution on one other point is that my client Cliven Bundy and his sons were subject to entrapment this US Attorney's Office the attorney Bob and Myra he's not I'm Ed went out to the Bundy ranch before any of this took place and in fact Larry Wooten says in this happened before where the Justice Department is in fact orchestrating what is in effect an entrapment the role of the BLM is to conduct the operation not for the US Attorney's Office to try to set the Bundy's up now you know Wooten who's Mormon himself was also disparaged in the course of this I'm just confused as to why you're telling us all of this because as I understand it the Wooten materials or the Wooten allegations are not really before us they are in the sense that you've made us aware of them and they are deeply disturbing I grant you that but the district court didn't rely on the district court's order the Wooten allegations at that point were irrelevant right for our purpose you're absolutely right your honor I just want you to know that all I'm asking is that if we nonetheless were to reverse what is it that you why is it that you're telling us you have to order the district court because the district court wouldn't do that on its own that's what I'm just confused about now what I'm telling you of this your honor is that you should not reverse and this query will get into that on behalf of the other defendants but I'm telling you that even if you did this case would be long since okay any further questions from Mr. Klayman thank you very much thank you for courtesy your honors thank you may it please the court Amy Cleary on behalf of Ryan Payne, Ammon Bundy and Ryan C Bundy the government has charged our clients with 16 very serious crimes all of which hinged on the theory that they engaged through to provoke a violent conflict to harm federal officers or obstruct those officers and it relied on a theory of false messaging yet the very evidence that the government withheld all ran to evidence that would have supported the defense that the defendants our clients did not engage in false messaging that is why this is such an egregious case and it's a troubling case and it's a rare case and it's a case that Judge Navarro below took very careful steps to give the government multiple opportunities to recognize that she was concerned about this discovery problems gave the government multiple opportunities to come to her and say why these things were not disclosed earlier to give the government multiple opportunities to provide additional briefing to go and find this information and to give other proffers to her and what the court found was that repeatedly the government was not only past the discovery deadline but past the trial deadline and through trial and even past the point that the mistrials was granted that the government stills was disclosing material Brady and Giglio evidence that ran to the heart of our clients defense and making material misrepresentations and proffers to the let's assume that we agree with you that the government did engage in flagrant misconduct here so let's assume that the district court didn't clearly error in making that finding can you help me with the substantial prejudice problem maybe by identifying the one or two just take the two best and strongest pieces of evidence that you were not provided and explain how that caused such prejudice that it could not be remedied through any anything less than address not just particularly evidence runner but I'd like to address the district court's finding that the government's case was faltering and the district court here sat already through two failed trials and had been familiar with the evidence it was familiar with that these are clients who are in a different position with these clients were not quote the gunman that were the other cases so as the court sat through the trial thus far it was receiving jury questions from the jurors now now all of them were asked but the jury questions already received by the district court in this case were indicating that the jury was reflecting it was having serious questions with the three and a half witnesses that the government had already produced it was questioning the tactics that the BLM had used why was the BLM using why had they not try to use other tactics in approaching the impoundment why was the BLM or the FBI not being honest in its representations to Ryan Bundy in recording the calls was there really any injury to any of the livestock or the property the jury just in the three and a half witnesses that were presented was already questioning what the government was presenting so the district court was already recognizing that the government if it had a chance to redo its case would not make those same mistakes again so the prejudice thus far one of the larger prejudices the district court did not think it was appropriate to allow the government to get a quote do-over to correct those mistakes that's one of the second is because the defense had to fight so hard to get all of this discovery evidence because the government and making these representations to the court and in normal circumstances the district court should be able to believe proffers from the government granted but in order for the defense to get the court to understand that the government was not being truthful the defense had to reveal a lot of its defense strategies through its four deer through its opening statements through its motions how it would use that evidence and by revealing all of that to the district court not only did the government get all of that it would use that now at a new trial counsel counsel isn't that isn't that true in almost any case that comes up on appeal here and then gets reversed by this court for for some kind of a trial error I mean at that point the government will try to correct whatever mistakes that may have made even even mistakes that weren't appealable the government thought where the government thought well we could we could have done this better and the defensive strategy will have been will have been revealed so why is why is that a problem because this happens all the time it considerably could happen but the substantial prejudice here is that when you combine all of that has gone on for the government to be able to take advantage of those prejudices on top of all of the misrepresentations on top of the faltering case on top of the fact that even if you did not believe that this raised a the type of prejudice in one particular area the prejudice is here stretch all the areas can I just ask though in response to my earlier question what I wanted you to do was to pick the strongest piece of evidence for you right the thing that's that you thought boy only has this when we should have gotten it before trial this is how things would have gone differently just give me a concrete walk me through a concrete example that the reason I'm asking for that is that the district court substantial evidence findings were very general and they were kind of boilerplate that she just repeated the same thing with respect to each category of evidence so just help me with it with a specific term whatever the strongest piece for you is I'll give you the example of the camera because the camera led all the way through the TOC lock when Ryan Bundy requested the camera evidence the government called it a fantastic and classical fishing expedition and told the magistrate judge that it wasn't material now under Brady we don't have to show materiality the government has an obligation to produce it nonetheless the government said it wasn't material later on through an evidentiary hearing that we had based on evidence that we discovered that there was shredding of documents a witness testified that there was a camera with a live feed that witness was the first inclination that there was a live feed of a camera that information led the district court to say to the government that's that's something that we that we would want more information of can you go back government and find more information the government said when that information came out and I quote so what that was the government's first response that surveillance camera is important for many reasons that surveillance camera was there was agents who were servicing the camera at night around the Bundy home in tactical gear and that were part of the environment that the Bundy's were when they were expressing that they were fearful and that they were surrounded and that they felt that there were snipers around their home that was part of that environment that they were expressing on social media that they were afraid through further evidentiary hearings and through further court orders after the court said to the government you don't just have a live feed with nothing taken of it that's just not the way things work and the government had to be pushed by the court to say go back government go and find something or at least give me a negative report that there wasn't something there it was only then that the government said okay we'll go back it was then that within a couple days of being directed by the court to find this information within a couple days the government found it from the FBI it wasn't as if it was in a storage facility that information was in the TOC file the TOC log not only did the TOC log have the camera contemporaneous notes from the camera it had the sniper entries it had contemporaneous information about what was going around not just in the Mesa that the government would want you to have it had information about the camera and the camera information and the information about these what was going around about the Bundy Ranch that's what's important yes we had information about what was going on generally about the Mesa area but it is the information about what was going on around the Bundy Ranch about the officers and their close proximity to the Bundy Ranch and tactical gear with rifles at night and that the camera was really what was preserving and what was reflecting to the Bundy's their surveillance during the day and why they felt enclosed and isolated during the day and then the additional documents about them being within 600 feet at night with rifles at night with being surveilled at night that was all part of the information that was necessary for the our defendants to show that this was not false messaging that when they provided this information on the Internet it was accurate meaning they were not conspiring and giving false messaging to harm anyone they were accurately putting out information because they truly felt that they were in danger by government overreach by the government trying to provoke them by the government trying to harm them and they were sincerely afraid now for the government to say we were unaware that that was been helpful to the defense when that's actually charged in the indictment makes no sense makes no sense these are experienced prosecutors well the AUSA is we're not aware of we're not aware of the of the thumb drive that I mean that's the whole problem is this thing was hanging on a keychain someplace and in somebody's trailer it had never become part of any of the investigated files it wasn't like the like the AUSA's or the FBI thought here it is let's bury it in the back of a some filing cabin hope nobody finds it well your honor when the government was ordered to produce it the only thing that needed to be done to produce it was to ask the TOC operator the TOC operator looked in the TOC file the TOC file was then produced and when asked where it was the TOC file was in its quote designated area in the TOC van that's it counsel counsel you're down to your last minute a half and I would still like to hear anything else you want to add to judge Watford's question so you told us the TOC log was important what is there is there anything else what's the next most critical piece of evidence that was withheld by the government the next most crucial piece is the threat assessments because that was something that the government had in its possession the entire time and the threat assessments were important because one of the arguments was that the BLM had been provoking the Bundy's to react and the 2012 threat assessment which the government had the entire time was withheld from the defense even though they specifically asked for it even though they denied to the district court that the defense had asked for it even though they specifically said they made the conscious decision not to provide it to the defense these are the types of misrepresentations that the district court found were flagrant were to respond to what I saw when I looked at those at those threat assessments I don't understand why you might have wanted them when I looked at their request the request didn't look very specific it asked for threat assessments but it didn't it said all threat assessments but if I'm if I'm the government I'm thinking well threat assessments are something that you prepare in the moment it wouldn't occur to me to come up I'm not sure what occurred to me immediately that you would want threat assessments from some non-incident from several years before so I if you had said we want all threat assessments that were prepared after 2005 then the government clearly would have violated that but if you just but if you just say we just want all the all the threat assessments I might be thinking well we have a threat assessment prepared for this time this day we'll give you all the ones were prepared by the sheriff and the BLM and the FBI in connection with this incident not within connection with something else at some other time so assessments are pretty are pretty are pretty particular to a time in a place if I may your honor the request was all threat assessments for quote this case so my response is twofold this case meaning the Bundy case the 2014 threat assessment specifically by the FBI relied on the 2012 threat assessment so the 2012 threat assessment was specifically incorporated into the 2014 threat assessment so it should have been provided number one number two because the threat assessments that indicated the BLM was accused of provoking the Bundy's that was Brady that should have been turned over because that was part of something that would have been useful in promoting the defense that the BLM provoked the Bundy's and by the over militarization of the law enforcement personnel and the way that they surrounded the Bundy home and used the surveillance cameras and were circling the home with snipers with rifles at night would have supported that judge Navarro very carefully and very reluctantly not only granted the mistrial but found the government's in this case were egregious flagrant and required that this not happen again and this is a rare case and it's one that I hope won't be repeated but in order for the government's obligations under Brady to be taken seriously judge Navarro made the decision that she made and she did not abuse her discretion she did not make clearly erroneous findings and it should be upheld under her supervisory powers and under due process. Okay, thank you very much. The government has to save some time. I have several points that I want to make in response to opposing counsel's argument first of all on July 12th 2017 that's four months before the trial Ryan Payne filed a pleading in the district court they included in their supplemental excerpt of record volume 14 at page 3157 and in that pleading Ryan Payne tells the court that based on the discovery the government had already produced as of July that discovery quote makes clear that the Bundy residence was being surveilled 24-7 unquote and that their surveillance teams quote were equipped with among other things rifles at all time so they knew in July 17 based on all of the material that we had that we had already provided that the Bundy residence was being surveilled 24-7 and the surveillance teams had rifles and so when they stood up same Ryan Payne's attorney on November 3rd at a hearing and said we just learned yesterday for the first time that there were actually officers overlooking the basis carrying rifles and that I mean I think that what happens is they and they said it over and over again I'm an almond Bundy's attorney said it on the 13th this is the very first time that we're learning that they were surveilling the Bundy home with rifles for the first time we're learning this for the first time we're learning this and the fact is that we had provided that information they had acknowledged that we had provided that information and if we and it is true if we had anticipated this defense or this theory that those officers or that the surveillance camera could have been mistaken for a sniper then when we did it our first pass through when we were turning over 400 FBI 302s we would have turned over those as well there was no reason not to and I think at the end of the day we get back to this idea of flagrancy is this isn't about whether the government missed a document here or fell short there the question is whether this was flagrant misconduct and for that I think you actually have to look at what these documents were that there's not a single one of these documents that we that we withheld because we did not want the defense to have it right I mean this is not a cooperation agreement of a testifying witness this is not a rap sheet of a testifying witness this is not material that that if the government doesn't disclose and they know that they the court can sort of make an inference whether as a factual matter is true or not there's an inference that you know you should have known that this is very clearly Brady what we're talking about here is maps that were identical to maps that we had just that we had provided 18 months earlier we're talking about the Felix supplemental 302 which is the fifth piece of evidence for the uncontested fact that Rangers Bronk and Russell were on the hill I mean for them to say that disclosing that failing to disclose the Felix 302 because he because he said that he saw an officer on the hill when we've already turned over videotape of the officers on the hill emails from the two officers talking about how they were on the hill one of the officers testified at one of the early trials that he was on the hill I mean there's simply no reason for us other than simple inadvertence to have not turned over that document and when it comes to flagrancy you have to find willfulness or reckless disregard if you look at the discovery log and the hundreds of hours thousands of hours that the prosecutors went through page by page trying to give the defendants everything that they might be able to use but sparing them the document that they have warned us against I mean I'm in money at the in his pleading before the complex case conference put the government on notice saying you know in the 10th Circuit they say the government can can throw a bunch of thousands of pages of irrelevant documents and then say hey look at all this discovery we need more time you better not be doing that and so we were we were very diligent about that so you can't get to reckless disregard of our constitutional obligations and then the other one is willful willful disclose willful suppression and here yes we didn't turn over these documents two of them were absolutely redundant to information that had already been provided and that is that that's the Rhodes versus Henry case that says that that's not a violation at all and regardless whether it's a violation at all it's certainly not flagrant misconduct with respect to the threat assessments I think that that the coring case is a good it has a good analogy there because in coring this court actually vacated defendants conviction and sent it back for a new trial didn't dismiss the indictment but you went through each of the documents and as Judge Walker said I mean you have to do that at the end of the day you look at them collectively but you also have to look at them individually and one of the documents that was suppressed in the coring case was evidence that a government witness had said a year before the alleged crime had said that he didn't think the defendant was corrupt and so on a few appeal the defendant said well I could have used that to cross-examine this witness you know because he had said that he didn't think I was corrupt a year earlier and what this court said is you know even if that's admissible and fine okay it's admissible but we question the materiality of somebody's you know somebody that something that somebody said a year before the crime was assessing the defendant's character you're talking about another case and you're over time is there anything you wish to say to sum up in a sentence or two the only thing that I want to say is that is that at the end of the day we do acknowledge that that some of these documents certainly should have been turned over and and to the extent based on what the court found there was there was a very good chance that we fell short but what we're talking about here is flagrant violations willful substantial prejudice and here a new trial or at most striking the three overt acts from the indictment would certainly cure any any possible prejudice so we'd ask this court to reverse okay well thank both sides for their argument the United States vs. Bundy submitted
judges: W.fletcher, Bybee, Watford